UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHARLES WEBB #236602,

        Plaintiff,

v.

CHRISTOPHER GOLLADAY, et al.,

        Defendant.
_____/

Case No. 2:19-cv-00110

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.  Introduction

State prisoner Charles Webb initiated this action on June 5, 2019 by filing a verified complaint. (ECF No. 1.)  The only defendant in this case is Corrections Officer (CO) Golladay.  Webb's sole claim is based on events that occurred at Chippewa Correctional Facility (URF).  Specifically, Webb alleges that CO Golladay retaliated against him, in violation of his First Amendment rights, when CO Golladay fired Webb from his prison employment.  Webb says he was fired because he had filed a grievance against CO Golladay.

This report and recommendation (R&R) addresses CO Golladay's motion for summary judgment based on Webb's failure to exhaust his administrative remedies. (ECF No. 30.)  In his supporting brief, Golladay initially argues that Webb only properly exhausted one grievance while at URF – grievance **URF-17-10-3036-12h**.

1

Golladay points out that this grievance does not complain about the allegations in this case. (ECF No. 31.)

In his response, Webb says that he submitted a Step III appeal in grievance **URF-17-08-2550-2b** on October 23, 2017 through an expedited service. (ECF No. 32, PageID.153-154.) He adds that the MDOC inappropriately labeled his appeal as being mailed the following day. (*Id.*)

In reply, CO Golladay made a different argument. Golladay says that Webb's Step III appeal for grievance **URF-17-08-2550-2b** was due on October 13, 2017, and that he it filed late. He asserts that the MDOC properly rejected this late appeal, and, as a result, this grievance was not properly exhausted. (ECF No. 33, PageID.162-164.) CO Golladay also emphasized that Webb's exhibit showing that he mailed his Step III response on October 23, 2017 has irregularities. (*Id.*)

On January 15, 2021, Webb requested leave to file a sur-reply that clarifies the underlying facts. (ECF No. 34.) The undersigned will grant Webb's request for leave to file a sur-reply for two reasons. First, Defendant did not object. Second, and more importantly, Webb included an affidavit that clarifies relevant facts surrounding the timeliness issue. In his supporting affidavit, Webb explained that he was being transferred to multiple MDOC facilities during the time that he was required to file his Step III appeal. In addition to being in transit during that period, Webb was held under observation without his legal paperwork and then held in administrative segregation. When Webb finally returned to administrative segregation at URF, his

personal property – including his legal documents – was still at an earlier MDOC facility and needed to be returned.

After a careful review of the associated documents and record, the undersigned concludes that there is a genuine issue of fact as to whether Webb was able to properly exhaust his grievance. Based upon the facts, this issue may best be decided in an evidentiary hearing pursuant to *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).

The undersigned respectfully recommends that the Court deny CO Golladay's motion for summary judgment.

## II.   Additional Relevant Procedural History

Webb filed his verified complaint on June 5, 2019. (ECF No. 1.) On July 25, 2019, the Court issued a screening opinion and order that dismissed both of Webb's Eighth Amendment deliberate indifference claim and First Amendment retaliation claim for failure to state a claim. (ECF No. 8, 9.) In an appeal of the screening opinion and order, the Court of Appeals found that there was sufficient facts to establish Webb's retaliation claim. (ECF No. 21.) Accordingly, the Court of Appeals vacated and remanded this Court's judgment as to the retaliation claim only. (*Id.*, PageID.93.)

Upon completion of the appeal, the case was referred to Prisoner Early Mediation, but failed to settle. (ECF No. 23, 24, 25, 26.)

Defendant filed his summary judgment motion and brief on November 30, 2020. (ECF No. 30.) Webb responded on December 16, 2020. (ECF No. 32.), Defendant then replied on December 30,2020. (ECF No. 33.) Finally, Webb filed his

motion for leave to file a sur-reply on January 1, 2021. (ECF No. 34.) His affidavit and supporting documents were included as attachments.

### III. Summary of Plaintiff's Allegations

On July 11, 2017, Webb filed grievance **URF-17-07-2089-17z** against CO Golladay because CO Golladay allegedly denied Webb's access to the bathroom during a prisoner count.[1] (ECF No. 1, PageID.4.) At that time, CO Golladay was aware that Webb had an enlarged prostate, which caused Webb to urinate frequently. (*Id.*)

About 20 days after the incident, Webb was hired as a housing unit porter. (*Id.*) As part of the job, Webb was to clean the unit's showers, which reportedly smelled like urine. (*Id.*) Webb felt as though he was not being properly equipped to complete this task, so he requested additional cleaning materials. (*Id.*) Around that same time, CO Golladay filed an allegedly fabricated work assignment evaluation form that stated that Webb refused to clean the showers because they smelled like urine. (ECF No. 1, PageID.4.)

On August 13, 2017, CO Golladay terminated Webb as a unit porter. (ECF No. 1, PageID.4-5.) Webb asserts that CO Golladay filed a fabricated work evaluation because of Webb's earlier grievance against him. (*Id.*) Webb contends that his termination was a retaliatory act in violation of the First Amendment. (*Id.*)

### IV. Summary of the Plaintiff's Relevant Grievance

---

[1]   To avoid confusion, the undersigned notes that there are two relevant grievances in this case: **URF-17-07-2089-17z** and **URF-17-08-2550-2b**. Webb's act of filing grievance **URF-17-07-2089-17z** is the alleged protected conduct underlying the First Amendment retaliation claim. Grievance **URF-17-08-2550-2b** is the grievance in which Webb attempted to exhaust his complaint that CO Golladay fired Webb in retaliation for filing grievance **URF-17-07-2089-17z**.

The relevant grievance in this case is **URF-17-08-2550-2b**. (ECF No. 33-1, PageID.175-178.) At Step I, Webb complained that, on August 13, 2017, CO Golladay fired him in retaliation for a prior grievance he had filed against CO Golladay. (*Id.* PageID.175.) The Step I grievance was denied on the merits after the MDOC investigated the incident. (*Id.* PageID.176.) Webb appealed the grievance to Step II and MDOC denied that appeal. (*Id.* PageID.177-178.) The grievance was returned to Webb on September 29, 2017, and so the due date for Webb's Step III grievance was October 13, 2017. (*Id.* PageID.168.)

In an affidavit attached to his sur-reply, Webb attests that he was transferred from URF to War Memorial Hospital on October 2, 2017. (ECF No. 34-1, PageID.184.) He also says that on October 3, 2017, he was transferred to Marquette Branch Prison. (*Id.*) While at MBP, Webb stayed in the infirmary for psychological evaluation without his legal property for seven days. (*Id.*) Webb goes on to explain that on October 9, 2017, he was transferred back to a URF segregation unit. (*Id.*) On October 10, 2017, Webb requested his legal papers, but was told by Prison Counselor (PC) McCloud that his legal property was still at MBP. (*Id.*) Webb submitted a grievance requesting his legal property and approximately one week later he received his legal property. (*Id.*, PageID.184-185.) Finally, on October 23, 2017, Webb filed his Step III grievance. (*Id.*, PageID.185.)

## V. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to

5

judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## VI.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."

---

2    Disputed issues of fact regarding exhaustion under the Prison Litigation Reform Act may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

*Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). In rare circumstances, an administrative remedy will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737). And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 2007 U.S. Dist. LEXIS 81101 at *12.

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019. Where grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004). However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit.

### VII. Analysis

The central issue is whether Webb was able to file his Step III appeal on time despite being transferred three times and housed without his legal paperwork during the period in which he was required to file his Step III response. For the following reasons, the undersigned concludes that there is a genuine issue of fact.

The MDOC policy directive requires prisoners to file their Step III appeals within ten business days of receiving a Step II response. (ECF No. 31-2, PageID.141 (MDOC P.D. 03.02.130 ¶ FF).) The parties do not dispute that Webb received his Step II response for grievance **URF-17-08-2550-2b** on September 29, 2017. (ECF No. 34-1, PageID.184 (Plaintiff's affidavit); ECF No. 33, PageID.164 (Defendant's reply).) As a result, Coordinator McLean correctly attests that a timely Step III appeal would be submitted by October 13, 2017. (ECF No. 33-1, PageID.168.) Both parties agree that Webb did not file his Step III response by October 13, 2017; instead, Webb filed his Step III appeal on either October 33 or 24, 2017. (ECF No. 32, PageID.153; ECF No. 33, PageID.163.)

As described in Section IV, Webb was repeatedly in a state of transit and/or incarcerated in a prison without his legal paperwork during the period in which Webb was required to file his Step III appeal. In fact, the evidence in the record indicates that Webb was housed with his legal paperwork for two days during this period: September 29 and October 1, 2017. Both days fall on a weekend and are not business days as contemplated by the prison's policy. When Webb returned to URF on October 9, 2017, he only had a few days to file his Step III appeal and was missing his legal paperwork. The paperwork was still at MBP. By the time Webb was reunited with

9

his paperwork, on or around October 17, 2017, the appeal deadline had passed. Based upon those facts, the undersigned concludes that there is a genuine issue as to timing and Webb's ability to file a Step III appeal.

The undersigned notes that the unanswered questions may be resolved if Defendants had provided evidence that Webb (1) could have extended his time to file a Step III appeal or (2) could have filed a Step III appeal without his legal paperwork. Defendants failed to provide such evidence. Instead, Defendants argued that there were inconsistencies in Webb's expedited mail form and included an affidavit from Coordinator McLean that states that Webb should have filed his Step III appeal on or before October 13, 2017. (ECF Nos. 33, 33-1.)

The undersigned further notes that the facts in this case are unlike those in *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 223 (6th Cir. 2011) (holding that a prisoner being transferred to another prison does not render the grievance process unavailable). In *Napier*, the prisoner faced a single transfer and failed to reasonably comply with the prison policy, which permits inter-facility grievances. In this case, Webb was in a consistent state of travel and housed without his legal paperwork throughout the period required to file a Step III appeal.

Webb did not exhaust his grievance through Step III of the grievance process by the deadline. But a genuine issue of fact remains regarding the question of whether he should have been strictly held to that deadline given the circumstances. Plaintiff may, of course, ask the Court to decide this issue in an evidentiary hearing pursuant to *Lee v. Willey*, 789 F.3d at 678.

## VIII. Recommendation

The undersigned respectfully recommends that this Court deny Defendant's motion. If the Court accepts this recommendation, the First Amendment retaliation claim will remain.

Dated:  May 10, 2021                     /s/ *Maarten Vermaat*
                                         MAARTEN VERMAAT
                                         U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).