UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHARLES WEBB #236602,        Case No. 2:19-cv-110

        Plaintiff,        Hon. Jane M. Beckering
                                                     U.S. District Judge

v.

CHRISTOPHER GOLLADAY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

    This Report and Recommendation (R&R) addresses Defendant Corrections Officer (CO) Christopher Golladay's motion for summary judgment (ECF No. 60).

    Plaintiff — state prisoner Charles Webb — filed suit under 42 U.S.C. § 1983 on June 5, 2019. In his verified complaint, Webb alleged that while he was incarcerated at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan, CO Golladay was deliberately indifferent to his serious medical needs, in violation of his Eighth Amendment rights, and retaliated against him, in violation of his First Amendment rights. (ECF No. 1, PageID.5.) Specifically, Webb claimed that in July of 2017, Golladay refused to allow him to use the restroom even though Webb suffered from an enlarged prostate — a medical condition leading to frequent urination. (*Id.*, PageID.3.) Webb said that shortly after he filed a grievance against Golladay for refusing to allow him to use the restroom, Golladay terminated Webb from his position as a porter. (*Id.*, PageID.4.)

On July 25, 2019, this Court issued an Opinion (ECF No. 8) and Order (ECF No. 9) dismissing Webb's complaint for failure to state a claim. But on July 22, 2020, the Sixth Circuit reinstated Webb's retaliation claim.[1] (ECF No. 21.) While this Court initially found that Webb had not alleged facts sufficient to establish that there was a retaliatory motive behind his termination, the court of appeals disagreed. (*Id.*, PageID.93.) CO Golladay now moves for summary judgment. Golladay argues that Webb's grievance was frivolous insofar as Webb alleged that a one-time refusal of his request to use the restroom during count violated his Eighth Amendment rights. Golladay further asserts that Webb has not established that retaliatory motive was the but-for cause of Webb's termination, and that he is entitled to qualified immunity. (ECF No. 61, PageID.255-263.)

The undersigned respectfully recommends that this Court deny CO Golladay's motion for summary judgment because Webb's grievance constituted protected conduct, and there is a genuine issue of material fact concerning whether Golladay's retaliatory motive was the but-for cause of Webb's termination.

## I.   Factual Allegations

Webb says that on July 11, 2017, he asked CO Golladay if he could use the restroom. (ECF No. 1., PageID.3.) According to Webb, he has an enlarged prostate, which causes frequent urination. (*Id.*) Webb says that when he requested to use the restroom, he showed CO Golladay the medication he takes for his condition and

---

[1]   The Sixth Circuit did not review this Court's dismissal of Webb's deliberate indifference claim because Webb did not address the claim in his appeal, and "thus abandoned it." (ECF No. 21.)

explained that he had requested a urine jug but that health services had denied his request. (*Id.*) CO Golladay did not allow Webb to use the restroom, leading Webb to urinate on himself. (*Id.*) Later that day, Webb filed a grievance, URF-17-07-2089-17z, based on Golladay's refusal to allow him to use the restroom. (*Id.*, PageID.4.)

On July 31, 2017, Webb was hired as a URF Unit Porter. (*Id.*) When CO Golladay gave Webb his work detail, Golladay stated, "you have bathroom issues[,] you won't be working long." (*Id.*) Webb says that on August 13, 2017, Golladay filed a fabricated work evaluation stating that Webb refused to clean the showers and terminated Webb's employment. (*Id.*) Webb says that he was willing to clean the showers but requested proper cleaning supplies as identified by the MDOC. (*Id.*) Because Golladay terminated Webb, Webb was labeled "unemployable" and placed on room restrictions for thirty days. (*Id.*, PageID.5.)

In contrast, CO Golladay says that the work evaluation was not fabricated; Webb failed to clean the showers on multiple occasions and, on August 13, told CO Golladay his reason for refusal was that the showers smelled like urine. (ECF No. 61-3, PageID.279 (Golladay Affidavit).) According to Golladay, Webb's "poor performance and direct refusal to do his job" were the only reasons for Webb's termination. (*Id.*) CO Golladay says that he did not act with retaliatory motive. (*Id.*)

In addition to his own statements, Webb provided a declaration from an inmate who witnessed Webb and Golladay's August 13, 2017 exchange. (ECF No. 63-1, PageID.292 (Young Declaration).) According to that witness, he watched from approximately five feet away as CO Golladay called Webb over to his station, and

3

asked Webb why he did not clean the showers. (*Id.*) Webb responded that the showers smelled like urine, and that he did not have the proper cleaning supplies. (*Id.*) CO Golladay then asked Webb if he was refusing to clean the showers, and Webb said that he was not, and asked if Golladay was going to give him proper cleaning supplies. (*Id.*) CO Golladay then told Webb that Webb had disinfectant but nevertheless refused to clean the showers, and that he was fired. (*Id.*)

## II.     **Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## III.    **Retaliation Analysis**

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)

(en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated by the protected conduct. *Id.* Here, CO Golladay does not contest that he took an adverse action by terminating Webb. Instead, he says that Webb was not engaged in protected conduct, and that a retaliatory motive was not the but-for cause of Webb's termination.

### a. Protected Conduct

CO Golladay first asserts that Webb's retaliation claim must fail because filing frivolous grievances does not constitute protected conduct, and Webb's July 11, 2017 grievance was frivolous. According to Golladay, Webb's grievance is "frivolous on its face" because, as detailed in the Step I denial (ECF No. 33-1, PageID.171), CO Golladay did not violate any policies by refusing Webb's request to use the restroom during count (ECF No. 61, PageID.256-258). Golladay also asserts that Webb's grievance is frivolous because, as determined by this Court, Golladay did not violate Webb's Eighth Amendment rights when he denied Webb's request to use the restroom. (ECF No. 61, PageID.258.)

The Sixth Circuit has explained that "protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). "If the grievances are frivolous, however, this right is not protected." *Id.* Prisoners "cannot exercise that right in a

5

manner that violates legitimate prison regulations or penological objectives." *Smith*, 250 F.3d at 1037. "'Abusive or manipulative use of a grievance system [is] not ... protected conduct,' and prison officials may take action in response to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal." *Griffin v. Berghuis*, 563 F. App'x 411, 416 (6th Cir. 2014) (quoting *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)).

Beyond the general acknowledgment that grievances used to abuse or manipulate the grievance system are frivolous, limited authority exists as to what renders a grievance frivolous. As acknowledged by the Sixth Circuit in *Maben v. Thelen*, "cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying grievance itself is *de minimis*." 887 F.3d 252, 264–65 (6th Cir. 2018) (collecting cases).[2] This Court has also found grievances involving "verifiably untrue" allegations to be frivolous. *Chrzan v. Mackay*, No. 1:19-cv-116, 2020 WL 7774741, at *3 (W.D. Mich. Nov. 30, 2020) (finding that the plaintiff's grievance was frivolous where a video recording of the underlying event contradicted the allegations in the grievance), *report and recommendation adopted*, No. 1:19-cv-116, 2020 WL 7773419 (W.D. Mich. Dec. 30, 2020).

Webb's grievance URF-17-07-2089-17z is shown below.

---

[2] For example, in *White–Bey v. Griggs*, the Sixth Circuit found that a prisoner's grievance that he was provided a typewriter rather than a computer was frivolous. 43 Fed. App'x 792, 794 (6th Cir. 2002).

> **MICHIGAN DEPARTMENT OF CORRECTIONS**
> **PRISONER/PAROLEE GRIEVANCE FORM**            4835-4247 10/94
>                                                 CSJ-247A
>
> Date Received at Step: JUL 1 2 2017    Grievance Identifier: URF 1171071 20891 11714
>
> Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.
>
> Name (print first, last): CHARLES WEBB   Number: 236602   Institution: URF   Lock Number: M-150   Date of Incident: 7-11-17   Today's Date: 7-11-17
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? If none, explain why.
>
> I Explained to officer Galladay that I had a medical condition (enlarged prostate) which causes writer to constantly urinate. Writer also showed Galladay the supplies he was given from healthcare.
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.
>
> On 7-11-17, Writer had to use the bathroom. Writer asked officer Galladay could he use the bathroom because he was about to urinate on himself. Writer explained to Galladay that he had a medical condition which causes him to constantly use the bathroom. Writer explained to officer Galladay that health service said they would not give him a urine jug because he could possibly throw it on a officer, however he was given supplies for leakage protection which is for after using the bathroom. Galladay told writer he could not use the bathroom and writer urinated on himself. Galladay's actions were cruel and unusual punishment in violation of writer's 8th Amendment, where Galladay was clearly informed of writer's medical condition. This incident happened at 11:30 AM.
>
> Grievant's Signature: Mr. Charles Webb #23660
>
> RESPONSE (Grievant Interviewed?) ☒ Yes ☐ No   If No, give explanation. If resolved, explain resolution.)

(ECF No. 33-1, PageID.170.)

As an initial matter, the undersigned cannot say that Golladay's denial of Webb's request to use the restroom is *de minimis* where it had a direct, adverse impact on Webb. *Thaddeus-X v. Love*, No. 98-2211, 2000 WL 712354, at *2–3 (6th Cir. May 22, 2000) (finding that a grievance complaining about a prison employee eating at his desk was "patently frivolous as the defendant's conduct had no adverse impact on [the plaintiff]"). Furthermore, it is not apparent that Webb's grievance is "verifiably untrue." *Chrzan*, 2020 WL 7774741, at *3. Therefore, the undersigned does not find that Webb's grievance is frivolous on those grounds.

The undersigned must then consider CO Golladay's assertions that Webb's grievance was frivolous because Golladay acted in accordance with policy, and because this Court found that Webb did not set forth a claim of deliberate indifference. The problem with Golladay's first assertion is that he essentially advocates for a standard by which this Court would decline to consider any retaliation claim involving a grievance that is ultimately denied. *Cf. Rayos v. Leavitt*, No. 1:20-cv-968, 2022 WL 876934, at *3 (declining to employ a standard for protected conduct that "would likely bar most prisoner retaliation claims where the respondent credits the MDOC employee's version over the prisoner's version"). And even if CO Golladay intended to argue that Webb's omissions rendered the grievance misleading, the undersigned disagrees. Webb's grievance complained that he was denied access to the restroom, causing him to urinate on himself (ECF No. 33-1, PageID.170); that the denial occurred during a time of limited mobility does not undermine his complaint. Moreover, it is not apparent that Webb intended to deceive the grievance respondents into thinking the denial took place outside of count — Webb specifically included the time that the interaction took place. (*Id.*)

Turning then to Golladay's assertion that Webb's grievance was frivolous because it failed to set forth a deliberate indifference claim, the undersigned again disagrees. As noted by this Court in *Rayos v. Leavitt*, requiring a grievance to "assert a constitutional right in order to constitute protected conduct . . . is not the proper standard." No. 1:20-cv-968, 2022 WL 873633, at *1 (W.D. Mich. Mar. 24, 2022). The only permissible restraints on a prisoner's First Amendment rights are those in

8

furtherance of "the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Nothing in MDOC Policy suggests that limiting the grievance process to constitutional claims is necessary to further legitimate penological goals. In fact, MDOC Policy Directive 03.02.130 ¶ F provides that "[g]rievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement that personally affect the grievant, including alleged violations of this policy, and related procedures." Therefore, even grievances complaining of unsatisfactory conditions that adversely impact the prisoner but do not violate the constitution are expressions of speech protected by the First Amendment.[3] *Rayos*, 2022 WL 873633, at *1 ("The First Amendment protects a prisoner's right to complain about conduct by prison officials. Those complaints do not have to rest upon constitutional rights in order to qualify as protected conduct."). Accordingly, the undersigned finds that Webb was engaged in protected conduct when he filed his grievance on July 11, 2017.

### b. Causation

CO Golladay next asserts that he is entitled to summary judgment because Webb cannot show that but-for his grievance, Golladay would not have terminated

---

[3] In *Wolfel v. Bates*, a prisoner was issued a rules infraction ticket after drafting a petition complaining that the COs were harassing the inmates by "starting showers and 'walklines' between 5:30 and 6:00 a.m." 707 F.2d 932, 933 (6th Cir. 1983). Though the petition did not complain of constitutional violations, the Sixth Circuit found that by punishing the plaintiff for drafting the petition without finding that the statements were false or malicious, the COs abridged his First Amendment rights. *Id.* at 934. *Wolfel* demonstrates that a prisoner's First Amendment right to seek redress of grievances has never been contingent upon a violation of their constitutional rights.

his employment. (ECF No. 61, PageID.258-261.) To prevail on a retaliation claim, retaliatory motive "must be a 'but-for' cause [of the injury], meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019). The Sixth Circuit employs a burden-shifting approach with regards to the causal requirement:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Blatter*, 175 F.3d at 399.

CO Golladay asserts that there is "no record evidence that Webb's restroom grievance on July 11, 2017 was the but-for cause of Webb being terminated from his job on August 13, 2017." (*Id.*, PageID.259.) He claims that the overwhelming evidence establishes that Webb was instead terminated for refusing to clean the restrooms. (*Id.*) CO Golladay's evidence includes Webb's work evaluation (ECF No. 61-3, PageID.281), Golladay's affidavit (Id., PageID.278-280), and a portion of Webb's deposition transcript wherein he concedes that CO Golladay was not the individual responsible for providing him with the cleaning supplies for his porter position (ECF No. 61-2, PageID.273).

Despite Golladay's contentions, Webb set forth evidence of a retaliatory motive in his verified complaint. As the court of appeals explained in its July 22, 2020 Order:

> Golladay's remark . . . could plausibly indicate, as Webb alleged, that Golladay had a retaliatory motive. Indeed, the remark both related to the issue underlying Webb's grievance and foreshadowed his firing. Similarly, . . . the events surrounding Webb's firing . . . could also,

10

>  accepting Webb's allegations as true, show that Golladay acted in retaliation. Moreover, there is a "temporal proximity" between Webb's grievance and his firing, supporting an inference of retaliatory motive.

(ECF No. 21, PageID.93 (citations omitted).) Acknowledging that Webb satisfied his initial burden, the determinative question is whether CO Golladay satisfied his burden of showing that he would have terminated Webb's employment regardless of the July 11, 2017 grievance. In the opinion of the undersigned, he did not.

When Webb filed his complaint, he acknowledged that the purported reason for his termination was his failure to clean the showers. (ECF No. 1, PageID.4.) He also conceded that he had not cleaned the showers because he did not have the correct cleaning solution. (*Id.*) The evidence that Golladay relies on in his motion for summary judgment does no more than confirm Webb's account. And Golladay's affidavit denying retaliatory motive is insufficient to carry his burden — Golladay has "done little more than deny the allegations" put forth by Webb. *Maben*, 887 F.3d at 268 (citing *Blatter*, 175 F.3d at 399). As such, the undersigned finds that there is a genuine issue of material fact concerning whether retaliatory motive was the but-for cause of Webb's termination.

### IV. Qualified Immunity

CO Golladay also asserts that he is entitled to summary judgment on qualified immunity grounds because he did not violate any of Webb's clearly established constitutional rights. (ECF No. 61, PageID.262-263.) "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Analyzing claims of qualified immunity involves a two-pronged test. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these prongs in either order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if the court finds that there is no constitutional violation, or that the right at issue was not clearly established. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first prong of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second prong. As the Supreme Court has

observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, supra, at 741–742, 563 U.S. 731, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S. at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. Id., at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. 7, ––––, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." Plumhoff, supra, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." Anderson, supra, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" Mullenix, supra, at 309 (quoting Anderson, supra, at 640–641, 107 S.Ct. 3034; some alterations in original).

13

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

Retaliating against prisoners for filing non-frivolous grievances violates their clearly established First Amendment rights. *Hill*, 630 F.3d at 472 (emphasis added) (citing *Herron*, 203 F.3d at 415). Because the undersigned finds that Webb's grievance was not frivolous, and there is a genuine issue of material fact concerning whether Golladay would have terminated Webb's employment regardless of his grievance, CO Golladay is not entitled to qualified immunity at this stage of the case.

## V.  Recommendation

The undersigned respectfully recommends that this Court deny CO Golladay's motion for summary judgment because Webb's grievance constituted protected conduct, and there is a genuine issue of material fact concerning whether Golladay's retaliatory motive was the but-for cause of Webb's termination.

Dated:  May 12, 2022                    /s/ *Maarten Vermaat*
                                        MAARTEN VERMAAT
                                        U.S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).